Our case is 24-11-1058 Moreno v. Circle K Stores, and for Ms. Moreno is Ms. Butler. Good afternoon, Your Honors. Virginia Hill Butler on behalf of Appellant Ms. Mary Moreno. May it please the court. The issue in this case is whether an employer can force you to choose between your life and your livelihood. In this case, 72-year-old Mary Moreno chose to protect herself, and it cost her her job. Ms. Moreno was working the cash register alone when she tried to defend herself from a man robbing the store while holding two knives. Instead of supporting Ms. Moreno after this traumatic event, Circle K fired her. Circle K's purported reason for firing Ms. Moreno was because she violated its policy against confronting robbers when she put up her hands to defend herself as the robber came near her. Behind the sales counter and came towards her. To the contrary, Circle K fired Ms. Moreno because she acted in self-defense. I will first address Appellant's motion to certify to the Colorado Supreme Court before moving on to the self-defense public policy wrongful discharge claim. Ms. Moreno moves this court to certify the question to the Colorado Supreme Court of whether a cause of action exists for self-defense as a wrongful discharge claim when the employee, excuse me, when the employee played no role in escalating the circumstances. In looking at whether or not to certify this question, this court looks to whether or not the question is determinative of the outcome of the appeal and whether or not it is novel. This question is determinative because Ms. Moreno appealed only the narrow legal question of whether or not this cause of action exists. Ms. Moreno did not appeal the district court's other holdings involving more factual determinations. If this cause of action exists, then the district court must be reversed. If the cause of action does not exist, then the district court must be affirmed. Isn't there still a fact question below as to Circle K's belief that she was not engaged in self-defense? Your Honor, I would first note that this is not the basis of the district court's order. The district court ruled as a matter of law that Ms. Moreno's cause of action did not exist. I understand that this court can still reach that question if it does in fact find... The court assumed there was a fact question. I'm just, if we send it over to the Colorado Supreme Court and they rule in your favor, the court still needs to come back here for a trial on basically Circle K's state of mind. Your Honor, Ms. Moreno would argue that whether or not the employers, excuse me, the decision makers honestly believed that she was acting in self-defense is an irrelevant question here. This is not a case where an employee was terminated because an employee was frequently tardy and then filed a sexual harassment complaint and then she was terminated and the decision makers honestly believed that they were terminating her because of her tardiness. In that case, the decision makers honestly held belief that they were firing her because of her tardiness could be a defense. Here, the decision makers honestly terminated Ms. Moreno because of her contact, her physical contact with the robber on October 4th, 2020. There's no dispute that that physical contact was the basis for their termination for her. But you would agree that any, just because there's physical contact doesn't mean that in every case it would be self-defense. Not all physical contact would be self-defense, no. But in this case, there is a factual dispute about whether or not Ms. Moreno was acting in self-defense. This is a quintessential factual dispute between the parties about whether or not her physical contact was in self-defense. Ms. Moreno, I think her language to her supervisor the night of the attack is telling. When he asked her why she put her hands up, she said, because I didn't know, I thought he was going to stab me. This is a quintessential jury issue for whether or not she was in fact acting in self-defense. But the primary issue for the court today is whether or not this cause of action does in fact exist. If this cause of action does exist, then this case will go down to the district court and Ms. Moreno must prove up her claims to a jury of her peers. But that's a factual dispute for a jury to hear, not a legal dispute for, not something that can be decided at this stage of the case. And I would also, going back to certification, this issue is novel. I think the district court's own uncomfortable, the language is expressed being uncomfortable recognizing this right shows how novel this issue is. The, there are no state law cases that the parties have been able to recognize, excuse me, have been able to find discussing this. This, the issue of whether or not this cause of action has come up once before to this court. This court, and this is the Donez v. Leprino Foods case that is cited in the briefing. And in that circumstance, the court chose to assume without deciding that this cause of action did in fact exist and then resolve it. Because in that case, the employer had, did not know that the employee claimed to have acted in self-defense, whereas here there is clear evidence that the employer knew that Ms. Moreno was acting in self-defense. What if we look at the video and we don't see self-defense at all? We see cigarette defense. He's reaching for the cigarette. She grabs his arm away. He's not turned toward her. He never turns toward her. Your Honor, I would say again, these are factual disputes that must be resolved by a jury of Ms. Moreno's peers. The police came and arrested the robber. He was charged with multiple felonies. He pled guilty to felony menacing with a deadly weapon. I think these are all considerations that a jury would take into account when they see a 72-year-old woman working behind a cash register alone, putting out her hand, telling him, don't come back here. And this man still comes back here. And what we have is her in a U-shaped counter where she has no means of exit. That's, I don't see the video that way at all. He's up against, there's a counter that comes out. He goes into the counter. He reaches with his left arm and there's a good two feet of space, which he could have walked directly behind him. Your Honor, I think again that these disputes are, whether I'm, I'm happy to argue whether or not this is self-defense, but I think that these are factual determinations that are for the jury to make in this case. This is not the basis of how the district court resolved this issue. I think the fact that. Shouldn't it be though? Shouldn't we get a decision whether or not summary judging should be granted? In other words, there's not a genuine issue of material fact on self-defense before we go off on this public policy odyssey. I believe here, Your Honor, there is a clear basis to find that there are disputes of material fact about whether or not Ms. Marino acted in self-defense. Again, there's no dispute that she believed that she was under assault. Did she initiate the contact? Your Honor, I think when the assailant, when the robber comes behind the counter, he clearly places her at a position of vulnerability. She, whether or not there can be arguments about whether or not she could have sidled away from him to the side or things like that. But the fact of the matter is that he's where he's, he's where, excuse me, he's somewhere that customers are not allowed to be. She clearly communicated that to him. He's in the middle of what he pled guilty to as a felony menacing. And I don't think you can ignore the factual situation of what we have. This is after sunset. It's during the COVID-19 pandemic. She's working alone. And another customer calls 9-1-1 because he was concerned about what had happened. So I think when did the menacing occur? Was it on when he was on the other side of the counter from her? We don't know that, right? Um, excuse me, Your Honor, the, he had two knives when he came behind the counter. And so that's why he was pled. He, what if he would have never come behind the counter? He still could have been found guilty of menacing. Could he not for displaying the knife? Your Honor, I don't, I don't know that that was ever decided at the criminal level. My point is that menacing doesn't really have anything to do with self-defense here, does it? I believe, Your Honor, because his having of the knives clearly puts her in a circumstance where she's at a physical disadvantage already. I mean, she already starts out. You have a young man and she's a 72-year-old woman who is in this counter where she's unable to get out. There is one entry and exit. And when you have a man holding two knives in that position, whether or not she has a tiny bit of space in order to get out from behind him is really a difficult question. And again, that makes it even more evidence that this is something that Ms. Marino should be able to argue to a jury of her peers who may see these facts differently, uh, because what you have is a circumstance, you know, the, the police officers were very concerned about her when they came to the store. The district attorney's office charged him with multiple crimes. There's no dispute that she honestly believed that she was under getting robbed and that she was under an attack. And I think that the presence of the knives only further elevates that to show that she was at a significant risk of harm. And thankfully she wasn't physically harmed in this circumstance, but she had no way to know that that would be the outcome. There's no way. Turning to the merits, um, we have to make an eerie guess here on what the Colorado Supreme Court would do with a public policy exception. What, what do you think the best legal support for the position you're arguing would be from the Colorado cases? Uh, Your Honor, I think that, you know, first we start with the Martin Marietta versus Lorenz test. And I think that what you see is how throughout the Colorado constitution statutes, how self-defense is a fundamental right that every Colorado resident and employee is aware of. It's clearly against public policy to make an employee stand there and get assaulted by a customer in order to keep her job. And I think this state recognizes that you don't lose the right to self preservation when you go to work. And a lot of companies have these zero tolerance confrontation policies, don't they? I don't, don't know if Circle K is an outlier in that regard. And, um, you know, it's a difficult choice, but couldn't the company say, well, our, our policy is actually safer for our employees because it, um, prevents escalations and, you know, more, more employers are better off with our policy rather than, you know, a case by case self-defense policy. Does that militate against an exception to the at-will employment doctrine? Or is, is that really irrelevant? But their policy, is that just an irrelevant consideration here? Because we should only focus on the employee. I think in this circumstance, the analysis of the Utah Supreme Court in the Ray versus Walmart stores, the 2015 case from there is helpful because they do take into consideration. These are serious concerns and we understand why these companies have these policies, but at a fundamental basis, that policy cannot trump an individual's right to self-preservation in that circumstance. It's against public policy to force an employee, um, to stand there and either choose between getting assaulted and keeping their job. And that that decision is not something that the state can sanction, even if these employees have, employers have these policy. Um, and I think that, you know, fortunately, uh, Ms. Moreno was not harmed, but we have to think about the logical consequences of whether or not this cause of action exists in circumstances where, you know, I don't mean to be sensationalist, but we have circumstances like the King super shooting and employees who are in those types of situations as well. We have to consider how the existence of this right is necessary for them to be able to protect themselves in these, in those circumstances. And, um, what's your, what would be your counter to the, well, we should just let the Colorado General Assembly come up with that with all exceptions. It's done it in other circumstances. Why don't we just let the political process work here? Your Honor, there's no specific employment law that gives rise to a cause of action that Circle K violated. And that is why the public policy exception exists. The public policy exception exists for those circumstances where the General Assembly has not made an affirmative proclamation creating a cause of action. And I think the language from Crawford Rehabilitation Services, uh. They could create a defense, couldn't they? The General Assembly could say it's improper to fire somebody who exercises good faith, self, self-defense. The General Assembly could do that, but the fact that they haven't done so doesn't mean that this cause of action doesn't exist. I think, again, the Crawford Rehabilitation Services versus Weissman language from the Colorado Supreme Court in 1997, the General Assembly is the branch of government charged with creating public policies and the courts may only recognize and enforce such policies. And what we have here is we have the, uh, the Colorado constitution and, uh, the statutes and case law that Ms. Marino has cited that are creating this public policy and excuse me, that are the expressions of the public policy of the state. And the court is charged with recognizing those public policies. And one thing I do want to emphasize, um, is that the, uh, the district court chose not to place an improper weight on its basis as a federal court interpreting state law and it refused to recognize the right in part because it was a federal court and in so doing, it did not place itself in the shoes of the Colorado Supreme Court. And I would like to, uh, reserve my remaining time for rebuttal. Thank you. Mr. Carroll for Circle K. May it please the court. Good afternoon, Your Honors. Tom Carroll from Littler Mendelson on behalf of Circle K with me at council tables, Nick Hankins, who's also on the briefs. I want to pick up on some of Judge Phillips' questionings from the opening argument. One thing is crystal clear. This court can affirm on any grounds. We cited the Siegmiller case in our briefs, but I think it's beyond reproach that Your Honors may approve or affirm on any grounds. I also think it's important to note that we're here before you on summary judgment. Rule 56 of the Federal Rules of Civil Procedure says if there's no genuine issue of material fact, then the movement would be entitled to a judgment as a matter of  That's summary judgment. So just because there's some fact issue or any fact, I should say, doesn't mean that this goes to jury. If there's no genuine issue of material fact, this court should affirm. And picking up on Judge Phillips' questions about the self-defense itself, Your Honors have a video. I hope that you've watched it. And if you haven't, I hope you watch it several times again. The way it comes through, you can click through frame by frame and see exactly what happened. It's about a minute and 25 seconds from start to finish this whole encounter. And what any reasonable fact finder, whether it be the jury, whether it be the decision makers from Circle K or whether it be Your Honors in making this decision, will see is that Ms. Moreno was not defending herself. And so you're asking us to make that ruling that there's no genuine issue of material fact when the district court did not? Correct, Your Honor. And to put a finer point on it, there are three different ways that this court can affirm. One of them, no genuine issue of material fact as to whether this was actually self-defense. And similar to the Donez case that Your Honor knows well because you were on that panel yourself, you needn't decide this question of whether this exception to outwill employment in Colorado exists or not if you decide the case on the facts. Did you make that pitch to the district court? We did, Your Honor. Yes. And the district court chose not to rule on that? Correct. It's in the briefings very similar to how it's been presented to Your Honors on de novo review. The district court made her decision, as did the Donez district court, on the basis that Colorado's Supreme Court would not recognize this exception to outwill employment. I think there's in particular a footnote in the district court's opinion that says, look, the parties have different characterizations of the encounter itself, but they're not material to the court's analysis. And then she went on to say, having decided as a matter of law, I didn't decide the fact issue, but it was certainly presented and fully briefed. Did we remand for that determination as opposed to make it ourselves? Was your question, can you or should you? Start with can. You certainly can. No question about it, Your Honors. This is up on de novo review. I would suggest that if it's remanded for the basis to have the district court reconsider the video and make an independent determination on that, it is very likely that we'll just be right back here one way or the other. Not certain. So I think you can. I don't think you need to. There are three different grounds for the Accords of Firm here. Only one of them is this, the self-defense. Why couldn't a jury disbelieve Circle K's rationale and just take, make a finding that it was pretextual and that they really did believe there was self-defense but didn't care? Well, I think this really weaves together, Your Honor, that our two arguments about whether it was self-defense and whether the decision makers honestly believed it. And I suppose I'll try to work through that backwards. One way that a jury could not come to a different conclusion is that it's undisputed in the record that the decision makers considered the video, three of them. It was the market manager who manages several stores, the regional manager above him and somebody from HR. All three of them watched the video. All three of them considered it. All three of them considered whether it was self-defense and they decided that it wasn't. And it's undisputed in this fact, this record before you on summary judgment, that they honestly believed it. Now, I'm not here to tell you that just because someone says it's honest, that makes it undisputed. But there is nothing else in the record that calls into question their honest belief. And so this is editorializing, but I can't believe Circle K fired this employee for what we saw in the video. Well, Your Honor, they have their policy, but yeah, I might quote the district judge who said this is regrettable and I don't disagree. I wasn't there. But as has already come to light today and as Your Honor, Judge Tinkovich already recognized, and as you see in all these cases that discuss it, and particularly in West Virginia and Utah, where the courts are the ones creating the policy, there's the Escalante case in California as well in the briefing. There's a lot going on here. There are countervailing interests for sure. But what the Circle K witness has testified and is also undisputed is that this policy is for the safety of everybody, for the safety of the employees, for the safety of the customers, for the safety of other customers. What do you think about if this, if the fellow stealing the cigarettes instead had attacked Ms. Moreno with deadly force, would she be precluded by policy from fighting back? Two answers to that question. First of all, Your Honor, as to the policy, the policy only prohibits these types of confrontations, right? And there's lots of synonyms resisting, chasing. They don't want people going outside of the convenience store and going after somebody, for example. So first of all, as you describe it, it doesn't sound like that would be a confrontation and therefore not a violation of the policy. Well, let me change it for you. Say he came around the corner to come back toward her and he had his knife out pointing at her and she lunged at him. I think those are different facts. I didn't ask if they were different facts. I want to know if that's a violation of the policy. If we take exactly the video that I'm picturing in my mind's eye here, having watched it countless times. No, I'm not asking about your video. I'm asking about a situation where the guy came around the corner and he had a knife out pointed at her and she lunged at him. I fully predict, Your Honor, that the employee would not be terminated in those situations and we would not be here today. But I've got to ask you a different, that's not responsive. Is that a violation of the policy? I mean, they may make a discretionary decision not to terminate her in that situation, but is it a violation of the policy? I'm not trying to be coy, Your Honor. If it's up to me, I would say that that's not a confrontation. And no, I don't, what you're describing in just a snapshot there does not sound like a violation of the policy to me. All right. What should Ms. Moreno have done? She should take a step back. Here's another fact in the record. I'm glad you asked, Your Honor. Thank you. You mentioned earlier, there's about two feet for her maybe to get around her, but Willow is also undisputed in the record from both testimony and from the video itself, the one that I call sort of the front-aunt video where you see her face. You can see the cigarette case behind her. You can see, again, with your own eyes, confirmed by undisputed testimony, she had approximately 10 feet to step back. That's it. And there's also undisputed testimony in the record from Craig Holmes, who is the regional supervisor. He said, had she only taken a step back, we wouldn't be here today. That was in his deposition. And it's the same, same is true here in this moment. Although on these facts, the perpetrator pled guilty to felony menacing, which is fear of imminent serious bodily injury, right? Right. A person commits the crime of menacing if, by any threat or physical action, they knowingly attempt or attempt to place someone in fear of imminent serious bodily injury. I don't dispute whether Ms. Moreno feared that she was in danger. I will tell you as a very clear — When you're — you either fight or flee, right, when you're in fear of serious bodily injury? Right. And she should flee. But here's the other thing not to lose sight of, Your Honors. It is — I mean, but that's — that's sort of the whole point. Sometimes the best defense is a good offense, and that's why it sounds like, at least on — to the extent you're arguing that she — it's clear she was not defending herself, that perhaps, perhaps she was. She just wasn't doing it the way you liked. Well, Your Honor, a couple of things I would point out just on the facts before you. First of all, Ms. Moreno herself testified that she was not verbally threatened. That was in response to her own counsel's questioning. I asked her, do you understand the word threaten? She said, yes. And I said, were you threatened? No. And then third, she called 911 that night. You have the recording. And you heard the operator said, and he threatened you with it? And she said, no, he did not threaten me with your knife — the knife. But that's verbally threatened. But he did have a knife. Correct. No doubt about it. And so she may have understood the question, did he utter the words, unless you give me that pack of cigarettes, which is what he was after, I will stab you. And the answer to that would be no.  And so to Judge Tintivet's question about the menacing charge and the aggravated robbery, honestly, my question or my answer to that is that I don't think that that  Mr. Wimmer pleaded guilty, and whether or not that he was charged with a crime, whether he pleaded the crime, I don't think has anything to do with the factual question, our first argument of whether this was, in fact, self-defense. But Judge Carson, as you're talking about these different hypotheticals and, you know, did this fight or flee and what should they do, I think that really brings us back to the policy side of it, right, which is how the district court decided it. And I'd like to spend my last few minutes here, if I may, of course, interrupt me, if you will, talking about — I will. Should we get to do that? Let me go ahead and do that. So I want to — I want you to assume that she was attacked with deadly force. I also want you to assume that fighting back would be a violation of the policy. OK? OK. In that instance, would there be a public policy cause of action for her? In Colorado, Your Honor?  No, there would not. And let me explain why. So going back to the Martin Marietta case, on through — by my count, a total of six Colorado Supreme Court cases have talked about this tort. You have the Mariani case. You have Crawford. You have the Coors case. Two more, forgive me, that escaped me. They're cited in one of the footnotes to our briefing on the motion to certify where they were interpreting whether a contract was void under public policy. And it's the same line of law. So we have at least six Colorado Supreme Court cases that have articulated, when is there this exception to at-will employment? And in Colorado, the Colorado Supreme Court has been clear as a bell. It must truly impact the public. It must be job-related. And the source of public policy must be sufficiently concrete to give people guidance about the behaviors that it does or doesn't require. And as to those sources of public policy, and this is where — and it's in our briefings — this is where we are very, very different than West Virginia and Utah. In Colorado, the Colorado Supreme Court has said the sources of public policy for this tort that the court recognized must come out of legislative pronouncements. Now it's expanded a little bit to include things like accounting rules, attorney's rules of professional responsibility. But in no way can it be coming out of the common law or jurisprudence. As counsel said in the opening argument, and it comes out of, I believe, it's the Crawford decision, where the Colorado Supreme Court said, in Colorado, the General Assembly creates public policy. The courts only recognize and enforce it. And so the Colorado Supreme Court recognized this exception to at-will employment, and Martin Marietta, no doubt about it. But they have since given all courts, including this court, the guidance on how to apply that and that it must be sufficiently clear. And so when it comes to these particular sources of public policy, as Judge Gorsuch said — now Justice Gorsuch, in the Defazio case that we cited, the court must take the facts as they're presented. It is a plaintiff's burden to present to this court what the sources of public policy are that she says create an exception to at-will employment. She says the Constitution. That's something the General Assembly had some involvement with, didn't they? Undoubtedly. And unquestionably, the Constitution is 100 percent a source of public policy. Is it a sufficiently clear source of public policy such that actors can determine their behaviors based on it, discern more than just a hortatory statement of general guidance? Is it really unclear if you have a Constitution that says you have a natural right to defend your life, that that really needs to be explained much further? I mean, do you have to have something that says, oh, an employee shall have the right to defend their life if they're attacked with deadly force behind a U-shaped counter? I mean, how far do we have to go? I mean, it just seems common sense to me that if someone is being attacked, they ought to be able to fight off the attack. And I realize that that's not exactly the facts that we have here, but your argument has far-reaching implications. I would say the plaintiff's argument has far-reaching implications, too. You know, and this is where, as I mentioned earlier, you have the Ray case talks about this a lot. And obviously, that the – Okay, but before you tell me about the Ray case, tell me about whether you disagree that the Constitution and the idea of self-defense is not clear enough to govern the situation. I do disagree with that, Your Honor. I would submit to you that the district court in the Donna's case, the district court here, the West Virginia Supreme Court in the Feliciano case, the North Dakota Supreme Court in the Potts case have all found, under materially identical provisions, no, this is not enough of a basis for us to intrude upon the employer-employee relationship and say, this is what you can and can't do. And what I was going to say about Ray is, and it comes up in the dissent, where he's talking about the fact that in Utah, the court can sort of develop their own public policy. They say, we've recognized this common law. We get to define it, which makes it much different than Colorado. And as the dissent says in that case, look, you have to now define it. What are the parameters? What is the nature and scope of this tort? And to your point, Judge Carson, certainly self-defense is in the Constitution. There's no doubt about it. But is it so clear that actors, such as Circle K or such as any other retail business or employer, can look at that? I have it here. Enjoying and defending their lives and liberties. So is that enough to say that they can't have fired Mary Ann Marino in this case? That's what they're asking the court to say. But I think it requires that sort of grappling with the public policy itself that is the proper province of the court, excuse me, of the Colorado General Assembly. The Colorado Supreme Court has told you that. I don't think that there's any reason to certify this. You have a clear and principled basis. I see my time has expired. Your Honors, the district court was correct. Summary judgment should be affirmed. Thank you, counsel. We appreciate that. Could you give Ms. Butler 90 seconds, a minute and a half? Thank you, Your Honors. I want to make a couple of points going off of what Judge Carson said. The Constitution can be a source of public policy. And this fundamental right of self-defense goes back to America's founding. The Declaration of Independence recognizes the inalienable right to life. Inherent in that right is the right to self-defense. You must be able to defend yourself in order to preserve your life. You do not have to let someone attack you before you have the right to defend yourself. This right is implicit in the U.S. Constitution and is discussed in Second Amendment jurisprudence. And this is why this right is explicit in the Colorado Constitution and codified in Colorado statute. And talking about the facts, I do want to talk about a little bit what came up about how Ms. Marino, under Circle K's argument, could have gone back into this U-shaped counter. And I just want to clarify that that's not an ability to remove herself from danger. If I am trapped in a room and there's someone blocking the door and I run from wall to wall along the back wall, that's not my ability to retreat. I have no ability to get out of the danger if my exit is blocked. But it wasn't here. And we'll watch the video and decide. And the briefing was great, both sides, quality counsel. There's a Sahara Desert in there, though, which is, are there any cases that you know of, and you can tell what I'm stuck on, where a woman reaching up and grabbing someone's sleeve as they're trying to take cigarettes, and that's the extent of it, would be considered self-defense? Your Honor, I don't have a case to point you to on the same facts. There's a good reason. Self-defense is she pops him over the head with a Coke bottle, or she takes a shotgun out from underneath the counter and shoots him, or something like that. She's defending the store's product. Your Honor, I think this is a factual dispute that different jurors could see this video differently and could take the testimony of Ms. Marino and see this differently. And that that really brings us to how this is, whether or not she was acting in self-defense is a jury question that Ms. Marino would like to argue to a jury of her peers. And for that reason, she would ask you to reverse the district court or certify this question to the Colorado Supreme Court. Any follow-up? Thank you, counsel. We appreciate your arguments. Well done. As Judge Philp says, the briefings were excellent, and it's an issue of first impression for us, and we'll look forward to deciding it. Counsel is excused.